UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CORNER COMPUTING SOLUTIONS and DALE JAKE CORNER,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br>GOOGLE LLC,<br><br>　　　　　　　　Defendant. | CASE NO. 2:23-cv-00939-TL<br><br>ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT |

　　　This is an action for breach of contract and breach of the covenant of good faith and fair dealing, related to Defendant Google LLC's allegedly improper response to Plaintiff Dale Jake Corner's complaints about negative online reviews of Corner Computing Solutions, his business. Dkt. No. 23 at 1–2. This matter is before the Court on Defendant's Motion to Dismiss First Amended Complaint for Failure to State a Claim. Dkt. No. 25. Having reviewed the governing law and relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS Defendant's motion.

I. BACKGROUND

A. Procedural History

Plaintiff is proceeding *pro se* (without an attorney). Plaintiff originally filed this action in the Superior Court of the State of Washington for Snohomish County on May 1, 2023. Dkt. No. 1 at 1. On June 22, 2023, Defendant removed the case to federal court, based on diversity jurisdiction. *Id.* at 1–2. On June 29, 2023, Defendant filed a motion to dismiss Plaintiff's original complaint (Dkt. No. 1-2) for failure to state a claim and insufficient service of process. Dkt. No. 10. Plaintiff did not file a response. On February 28, 2024, the Court granted the motion in part, dismissing Plaintiff's original complaint but allowing Plaintiff to file the First Amended Complaint ("FAC") as well as providing an opportunity for him to properly serve Defendant with the FAC.[1] Dkt. No. 20 at 6, 9. On April 1, 2024, Plaintiff filed the FAC. Dkt. No. 23.

Defendant filed the instant motion to dismiss on April 29, 2024. Dkt. No. 25. On May 16, 2024, Plaintiff filed a response. Dkt. No. 27. On May 28, 2024, Defendant filed a reply. Dkt. No. 28.

B. The First Amended Complaint

There are two components to the FAC. First, the FAC alleges breach of contract and breach of the covenant of good faith and fair dealing associated with "spurious" content posted to the online profile of Plaintiff's business. Dkt. No. 23 at 1–9. Second, the FAC alleges breach of contract and breach of the covenant of good faith and fair dealing when Defendant "for 5 or more months banned [his] Virus Total account without pre notification or communication." *Id.* at 9.

---

[1] Plaintiff also filed a motion seeking leave to amend his original complaint. Dkt. No. 21. This motion, while granted, was unnecessary, given the Court's ruling on the original motion to dismiss. *See* Dkt. Nos. 19, 22.

### 1. "Spurious" content allegations (FAC Claims 1–3)

The "spurious" content allegations comprise claims 1, 2, and 3 in Section 2 of the FAC. Dkt. No. 23 at 1–9. While the FAC is somewhat unclear, these allegations appear to be based on Defendant's: (1) "refusing to remove spurious 'Fake Engagement' and or 'Misrepresentation' reviews" and "refus[ing] to remove the 'Prohibited and Restricted Content' reviews" on a business account with Defendant; and (2) "bann[ing] [Plaintiff's] Virus Total account without pre notification or communication" *Id.* at 1–2; *see also id.* at 15–50 (exhibits to complaint). More specifically, Plaintiff alleges that Defendant breached its contract with Plaintiff by "outright ignoring communication requests, requests for clarification, as well as ignoring the escalation requests via their own online forms; and specifically not obeying their own policies regarding the contract." *Id.* at 2.

The FAC identifies the "Google Terms of Service" and the "Google LLC Maps User Generated Content Policy" as the contract(s)[2] that Defendant allegedly breached. According to the policy identified by Plaintiff and reproduced as an exhibit to the FAC, "Fake engagement is not allowed and will be removed." *Id.* at 16. Among other things, "fake engagement" includes "false or misleading accounts of the description or quality of a good or service" and "content that has been posted by a competitor to undermine a business or product's reputation." *Id.* at 18–19. Plaintiff alleges that his business's account was beset by "1 Star reviews" that constituted "[f]ake engagement" in violation of the policy. *Id.* at 3. He does not, however, specify why or how he believes these reviews are, in fact, fake. The FAC identifies 10 such reviews that Defendant allegedly refused to remove, despite having "been notified of the situation via their own forms

---

[2] As will be discussed more comprehensively below, *see infra* Section III.A., the "Google LLC Maps User Generated Content Policy" is just that—a policy. It is not a legally enforceable contract between Plaintiff and Defendant.

ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3

and contact procedures and . . . given ample time to fix the issue." *Id.* at 4–8, 9. The FAC thus alleges that Defendant "could have fairly removed these . . . reviews via their own policy; dealt fairly and in good faith with [Plaintiff] and has chosen not to." *Id.* at 8.

### 2. Virus Total allegations (FAC Claim 4)

The Virus Total allegations appear in Claim 4 of the FAC. Dkt. No. 23 at 9. Plaintiff alleges that, "Despite many contacts about the issue[,] [Defendant] refuses to ban the acting spurious 'Troll' accounts on 'Virus Total' leaving spurious comments; and yet has banned [Plaintiff's] account instead." *Id.* Plaintiff also asserts that Defendant did not "act[ ] in 'The Covenant Of Good Faith And Fair Dealing,' resulting in a third breach of contract on those grounds." *Id.* at 9–10. In support of his claim, Plaintiff attached as an exhibit to his FAC what appears to be his "user profile" for the service, as well as what the Court construes as excerpts of online conversation(s) between Plaintiff and at least one other third party.[3] *Id.* at 44–50.

## II. LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to

---

[3] Without a primer on Virus Total terminology and functionality, it is difficult for the Court to ascertain the specific nature of the material appended to the FAC as "Exhibit C."

Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

A *pro se* complaint must be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even so, a court should "not supply essential elements of the claim that were not initially pled." *Henderson v. Anderson*, No. C19-789, 2019 WL 3996859, at *1 (W.D. Wash. Aug. 23, 2019) (quotation marks omitted) (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for pro se litigants." (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987))).

"[I]t is axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022) (internal citations omitted). Still, "[a] district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988)).

### III.   DISCUSSION

Defendant argues that Plaintiff has failed to state a claim for relief for two reasons. First, Defendant argues that Defendant is immune from liability under Section 230 of the Communications Decency Act ("Section 230"), 47 U.S.C. § 230(c)(1). Dkt. No. 25 at 13. Section 230 precludes liability "'when the duty plaintiff alleges the defendant violated derives from the

defendant's status or conduct as a publisher or speaker.'" Dkt. No. 25 at 13 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009)). However, Defendant also admits, as it must, that Section 230 is not a complete bar to liability if a provider of interactive services "has a 'manifest intention to be legally obligated to do something [such as] remov[e] material from publication.'" *Id.* at 14 (quoting *Barnes*, 570 F.3d at 1108–09).

Second, Defendant argues that Plaintiff has failed to state a claim for either breach of contract or breach of the covenant of good faith and fair dealing. *Id.* at 16. Plaintiff's FAC focuses entirely on what is essentially Defendant's alleged manifest intention to act pursuant to a contract with Plaintiff. Dkt. No. 23 at 1–9; *see also* Dkt. No. 27 at 1–2 (asserting that "[t]he case is about how [Defendant] has a contractual obligation to adhere to its promises made in the 'Terms of Service' . . . and has not done so"). Therefore, the Court limits its analysis herein to Defendant's contract law–based contention that Plaintiff has failed to adequately allege the elements of a breach-of-contract claim. Dkt. No. 25 at 16. As will be discussed below, the Court agrees with Defendant and finds that Plaintiff has failed to allege the elements of his contract claims, in both the "spurious" content allegations—*i.e.*, FAC claims 1, 2, and 3—and the "Virus Total" allegations—*i.e.*, FAC claim 4.

### A.    "Spurious" Content Allegations

With respect to Plaintiff's allegations regarding Defendant's nonremoval of the "spurious" content, the FAC does not demonstrate a contractual obligation that required Google to remove the one-star reviews. Consequently, Plaintiff has not sufficiently pleaded a breach claim on those allegations.

1. **Initial Matters**

    a. **Choice of Law**

Defendant's motion raises in a footnote that its "Terms of Service, which Plaintiff refers to as the operative contract between the Parties, includes a California choice of law provision." Dkt. No. 25 at 17 n.6. While Defendant did not brief this potential choice-of-law issue, it cites both California and Washington law in its motion to dismiss (Dkt. No. 25 at 17, 18). Likewise, Plaintiff did not identify which law he believes should govern this action in either the FAC or his response to Defendant's motion to dismiss. *See generally* Dkt. Nos. 23, 27. However, the elements of a breach-of-contract claim are essentially the same for both states: (1) existence of a contract; (2) breach of that contract; and (3) damages. *Compare Wall St. Network, Ltd. v. N.Y. Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008), *with Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467, 404 P.3d 559 (2017). With respect to the covenant of good faith and fair dealing, under Washington law, "If there is no contractual duty, there is nothing that must be performed in good faith." *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1269 (W.D. Wash. 2023) (quoting *U.S. Bank Nat'l Ass'n v. Tait*, No. C16-767, 2016 WL 5141990, at *7 (W.D. Wash. Sept. 21, 2016) (internal quotation marks removed)). The same is true under California law. *See, e.g., Griffin v. Allstate Ins. Co.*, 920 F. Supp. 127, 130 (C.D. Cal. 1996) ("[The covenant of good faith and fair dealing] does not have an existence independent of its contractual underpinnings.") (citing *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 638–39 (Cal. 1995)). Therefore, where Plaintiff does not sufficiently allege a breach-of-contract claim, he necessarily cannot allege a breach of the covenant of good faith and fair dealing.

    b. **Terms of Service**

Although Plaintiff references Defendant's Terms of Service in his FAC, he does not provide a clear recitation of which specific provisions in this contract were allegedly breached,

or identify which version of the Terms of Service is at issue in this case. *See* Dkt. No. 23 at 2. For its part, Defendant includes in its motion a link to a version of the Terms of Service effective May 22, 2024. Dkt. No. 25 at 17. In his response, Plaintiff attaches as an exhibit a version of the Terms of Service effective January 5, 2022. Dkt. No. 27 at 7–10.

On a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Under incorporation by reference, a court may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. Here, Defendant's Terms of Service form the basis of Plaintiff's claim. Dkt. No. 23 at 2. Therefore, the Court will consider them on the instant motion.

As Plaintiff does not provide any dates associated with the posting of the "spurious" content, or with his reporting thereof to Defendant, it is not apparent which version of the Terms of Service represents the controlling contract in this case. Assuming, *arguendo*, that the complained-of conduct occurred within Washington's six-year statute of limitations for causes of action sounding in contract law (since Defendant did not raise the statute of limitations in its motion), either the October 25, 2017; March 31, 2020; January 5, 2022; or May 22, 2024, version would contain the operative language. *See* RCW 4.16.040(1). California's statute of limitations for contract-based causes of action is four years. Cal. Civ. Proc. Code § 337(1). Accordingly, the Court takes judicial notice of four versions of Defendant's Terms of Service—

the version effective October 25, 2017; the superseding version effective March 31, 2020; the superseding version effective January 5, 2022; and the superseding (and current) version effective May 22, 2024—and considers them here. However, the Court also notes that the outcome would be the same, regardless of which version controls.

### 2. Existence of a Contractual Obligation

Here, Plaintiff has not alleged the existence of a contractual provision that obligated Defendant to remove the so-called "spurious" reviews. The FAC identifies two purported contracts that Defendant allegedly breached: (1) Defendant's Terms of Service; and (2) what Plaintiff refers to as "Google LLC Maps User Generated Content Policy." Dkt. No. 23 at 2 (internal quotation marks removed); *see also* Dkt. No. 27 at 2 (identifying "Terms of Service" as "the contract in question" in this matter).

#### a. Defendant's Terms of Service

With respect to Defendant's Terms of Service, both Plaintiff and Defendant agree that they are parties to a binding contract embodied by Terms of Service. *See id.*; Dkt. No. 25 at 8. However, no version of the Terms of Service contains any contractual language that would have obligated Defendant to do what Plaintiff alleges it should have done—namely, remove content that allegedly constituted "Prohibited and Restricted Content." *See* Dkt. No. 23 at 2. Rather, the Terms of Service unambiguously describe the scope of their purview. In the 2017 Terms of Service, Defendant does not make "any specific promises about [its] services" "other than as expressly set out in these terms or additional terms" [October 25, 2017, version, https://perma.cc/9FTA-H44C]. The latter three versions of the Terms of Service expressly limit Defendant's liability to, respectively: "losses caused by our breach of these terms or service-specific additional terms" [March 31, 2020, version, https://perma.cc/H4CD-AA63]; and "breaches of these terms or applicable service-specific additional terms" [January 5, 2022,

version, https://perma.cc/C6PY-Q27S; and May 22, 2024, version, https://perma.cc/QTP7-735S]. Put another way, any viable breach claim here would need to be based on language contained within the four corners of the Terms of Service, or on language contained within "service-specific" terms of service.[4] And in short, the claims brought in the FAC are not.

### b. Prohibited and Restricted Content Policy

The FAC asserts that Defendant's policy on "Prohibited and Restricted Content" is "part of the contractual obligations of both parties." Dkt. No. 23 at 8. In contrast, Defendant characterizes this document as merely a "voluntary polic[y]" that does not "create a contractual duty for [Defendant] to remove 'spurious' reviews." Dkt. No. 25 at 17. Given the plain language of the Terms of Service, the Court finds that it is Defendant who more accurately describes the scope of the contractual agreement at issue in this case.

First, the unambiguous contractual provision limiting Defendant's liability solely to breaches of the express Terms of Service renders Plaintiff's position untenable. *See supra*, Section III.A.2.a. Second, Plaintiff's own attachments make clear that the "Prohibited and Restricted Content" policy is not part of the Terms of Service. Plaintiff's attachment to his response shows certain webpages that are clearly labeled under a tab titled "Terms of Service." Dkt. No. 27 at 7–10. But the material captioned "All Business Profile policies & guidelines," also attached to Plaintiff's response—and which includes a link to content titled "Prohibited and restricted content," that, in turn, contains the statement "Fake engagement is not allowed and will be removed"—is on a webpage labeled "Help Center." *Id.* at 11–12. Similarly, the attachment to Plaintiff's FAC with the fake-engagement language is on a webpage labeled "Local Guides

---

[4] "Service-specific" terms of service refer to terms for individual Google products and services such as YouTube or Google Maps. As discussed above, the FAC identifies "Google LLC Maps User Generated Content Policy" as a purported contract to which Plaintiff and Defendant are parties. Dkt. No. 23 at 2. But the FAC does not identify any of Defendant's service-specific terms of service as an applicable contract here.

ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT - 10

Help." Dkt. No. 23 at 17. As presented here, "Help Center" and "Local Guides Help" are separate and distinct from the Terms of Service.

Finally, Plaintiff has not provided any authority stating that a company's policies or information placed on help pages are necessarily incorporated into its terms of service. And the only caselaw the Court could locate supports a finding that, under both Washington and California law, materials extraneous to a contractual terms of service are not considered part of the contract absent some implicit incorporation. *See, e.g., Marchand v. Northrop Grumman Corp.*, No. C16-6825, 2017 WL 2633132 at *5 (N.D. Cal. June 19, 2017) (holding extraneous document was incorporated into contract under California law only where, *inter alia*, contract's reference to that document was "clear and unequivocal"); *Rodriguez v. Google LLC*, No. C20-4688, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021) (noting that incorporation under California law "compel[s] the primary document to at least reference the document sought to be incorporated"); *Double D Trade Co., LLC v. Lamex Foods, Inc.*, No. C09-919, 2009 WL 4927899, at *5 (W.D. Wash. Dec. 14, 2009) ("For a document to become part of a contract under the incorporation by reference doctrine [under Washington law], the contract must explicitly incorporate the other document."). Nowhere in the contractual terms of service under examination here are the policies at issue mentioned, let alone implicitly or explicitly incorporated therein.

It may be misleading for Defendant to state in a policy that fake engagement *will* be removed while admitting in its briefing that its policies are merely aspirational. *Compare* Dkt. No. 27 at 12, *with* Dkt. No. 25 at 19. But that does not make Defendant's actions here a breach of contract. And in the absence of any binding contractual language that would have obligated Defendant to remove the "spurious" one-star reviews, the Court finds that Plaintiff has not

established the first element of a viable breach claim. Consequently, Plaintiff's breach of contract claim *and* breach of covenant of good faith and fair dealing claim must be dismissed.

The Court further finds that providing Plaintiff with a second opportunity to amend the "spurious" content claims would be futile. *See Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012). ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile."). Plaintiff has identified Defendant's Terms of Service as "the contract in question" in this case (Dkt. No. 27 at 2), and the Court has found nothing in the contractual language therein that would substantiate the "spurious" content–related breach claims in the FAC. Therefore, claims 1, 2, and 3 of the FAC are DISMISSED WITH PREJUDICE.

## B.     "Virus Total" Allegations

As to the "Virus Total" allegations, the FAC does not identify any contractual language that, on its face, has anything to do with an entity called Virus Total. The FAC's recitation of the allegations regarding his Virus Total account is thin and consists of a single paragraph. *See* Dkt. No. 23 at 9. Plaintiff alleges that "[Defendant] for 5 or more months banned my Virus Total account without pre notification or communication," but he does not explain what a "Virus Total account" is or, indeed, why (or how) Defendant was obligated not to ban it. *See* Dkt. No. 23 at 9. The only allegation he makes in regard to any breach of contract is to state in a conclusory fashion that Defendant was "again not acting in 'The Covenant Of Good Faith And Fair Dealing' resulting in a third breach of contract on those grounds." *Id.* at 9–10.

Plaintiff does not identify the contract or contractual provision that Defendant allegedly breached by banning his Virus Total account, and he does not draw any connection between the alleged conduct of the so-called "troll accounts" and Defendant's action of banning his account. Moreover, Defendant's Terms of Service, discussed at length above, do not include the term "Virus Total" (or link to a "service-specific" terms of service for Virus Total). Given that

Plaintiff has not identified any further contract that might or might not control Defendant's obligations to him with respect to his Virus Total account, the Court finds that Plaintiff has not established the existence of a contract between Defendant and himself in this regard. Having failed to establish the first element of a breach claim, then, Plaintiff's "Virus Total" claim must be dismissed.

Defendant urges the Court to dismiss these claims with prejudice. Dkt. No. 28 at 11. The Court agrees. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted). "When a *pro se* party fails to cure deficiencies that the court has previously identified, the court may order dismissal without leave to amend." *DiMaio v. Cnty. of Snohomish*, No. C17-128, 2017 WL 5973067, at *7 (W.D. Wash. Dec. 1, 2017). The Court notes that the FAC represents Plaintiff's second attempt to sufficiently plead a breach-of-contract claim on the "Virus Total" allegations. *Compare* Dkt. No. 23 at 9, *with* Dkt. No. 1-2 at 2. In its prior motion to dismiss, Defendant specifically pointed out that "Plaintiff does not allege what specific contract it contends applies to its use of Virus Total, whether such contract imposes any obligations on Google, and if so, what those obligations are." Dkt. No. 10 at 16. And the Court's Order (Dkt. No. 20) on Defendant's first motion to dismiss (Dkt. No. 10) granted Plaintiff leave to re-file his complaint, noting that Plaintiff would need to "identify the contractual provisions that were allegedly breached." Dkt. No. 20 at 7. While the FAC attempted to do just that for the "spurious" content claims, it did not for the "Virus Total" claims. *See* Dkt. No. 23 at 1–8, 9. Accordingly, the Court finds it appropriate to DISMISS WITH PREJUDICE Claim 4 of the FAC.

//

//

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss (Dkt. No. 25) is GRANTED, and Plaintiff's First Amended Complaint (Dkt. No. 23) is DISMISSED WITH PREJUDICE.

Dated this 25th day of September 2024.

Tana Lin
United States District Judge